**STEVEN J. ROTHANS – State Bar No. 106579**
**JILL WILLIAMS - State Bar No. 221793**
**CARPENTER, ROTHANS & DUMONT LLP**
**500 South Grand Avenue, 19th Floor**
**Los Angeles, California 90071**
**(213) 228-0400 / (213) 228-0401 (Fax)**
**srothans@crdlaw.com / jwilliams@crdlaw.com**

**ROBERT FABELA, CITY ATTORNEY**
**GREGG AUDET – State Bar No. 158682**
**Assistant City Attorney**
**200 S. Anaheim Boulevard, Suite 356**
**Anaheim, CA  92805**
**(714) 765-5169 / (714) 765-5123 [Fax]**
**gaudet@anaheim.net**

Attorneys for Defendants,
City of Anaheim and Chief Rick Armendariz

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSIE CAMACHO and ALBERT ARZOLA, individually and as successors-in-interest to DECEDENT ARZOLA, deceased, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF ANAHEIM; CHIEF OF POLICE RICK ARMENDARIZ, in his official capacity; DOE SHOOTER OFFICER in his individual and official capacity; and DOES 1-10, inclusive, <br><br> Defendants. | Case No. 8:25-cv-02872-MRA-ADS <br><br> **NOTICE OF MOTION AND MOTION FOR ORDER STAYING CASE PENDING CONCLUSION OF ORANGE COUNTY DISTRICT ATTORNEY'S OFFICE CRIMINAL INVESTIGATION** <br><br> Date:  July 21, 2026 <br> Time: 10 a.m. <br>  Courtroom: 9B (Santa Ana) <br><br> Discovery cut-off:  Not set <br> Final pre-trial conference:  Not set <br> Trial:  Not set |

PLEASE TAKE NOTICE that on July 21, 2026, at 10:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 9B, 9th Floor, of the United States District Court, Central District of California, located at 411 W. Fourth Street, Santa Ana, California, Defendants City of Anaheim and Chief Rick

-1-

NOTICE OF MOTION AND MOTION TO STAY

Armendariz will and hereby do move the Court for a limited stay of proceedings until such time as the Orange County District Attorney's Office can complete its criminal investigation of the subject officer involved use of force incident.

This motion was filed following meet and confer efforts of counsel, pursuant to Central District Local Rule 7-3, by both email and telephonic conference. Counsel were unable to informally resolve the issues raised in this motion.

This motion will be made and based on this Notice of Motion, the Memorandum of Points and Authorities, the pleadings and records on file with this Court, any evidence of which the Court may take judicial notice prior to or at the hearing of this matter, and upon such oral or documentary evidence as may be presented at the hearing of this motion.

DATED: May 29, 2026          CARPENTER, ROTHANS & DUMONT


                             By:  /s/ Jill Williams
                                  Jill Williams
                                  Attorneys for Defendants

-2-

NOTICE OF MOTION AND MOTION TO STAY

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This lawsuit arises out of the shooting of the plaintiffs' decedent by an Anaheim Police Department police officer less than six months ago, on December 6, 2025.  The shooting is being investigated by the Orange County District Attorney's Office, Special Assignment Unit (OCDASAU), whose team members are tasked with investigating the lawfulness of the use of force incident and determining whether criminal charges should be filed against the officers involved.  The OCDASAU team performs this investigation by collecting, holding, and testing physical evidence and taking statements from numerous witnesses.  The team's findings are then referred to a deputy district attorney who makes a final recommendation as to whether criminal charges are warranted against the involved officer.

The OCDASAU's criminal investigation relative to this shooting has been ongoing since the date of the incident, and, as of the date of this motion, is not yet complete.  The physical evidence pertaining to the incident is in the possession of the OCDA.

Meanwhile, a Scheduling Conference in this civil case is set for July 14, 2026.  See Dkt. 27.  The City of Anaheim anticipates that plaintiffs will imminently serve written discovery.  The City also anticipates that the plaintiffs will want to depose the involved officer.  When that occurs, the officer's testimony (or his discovery responses, if he is named as a defendant) could be used against him in a criminal proceeding, which could create a "Catch-22" situation with the officer.  In other words, the officer would be forced to choose between exercising his Fifth Amendment rights to protect his liberty interest vis-à-vis a potential criminal action.  In turn, that could be used as a sword against the officer in this civil action.  Alternatively, the officer would have to endanger his liberty interest by waiving his Fifth Amendment rights so that he can actively participate in

- 1 -

NOTICE OF MOTION AND MOTION TO STAY

discovery in this civil litigation.  This quandary prejudices not just the officer, but the City also because it creates a potential conflict of interest, where the City would be placed in the situation of defending against an action about which its employee may refuse to speak.

A limited stay of this matter  to allow the OCDASAU to complete its investigation results in little, if any, prejudice to the plaintiffs.  On the contrary, staying the action until the completion of the OCDASAU investigation will streamline discovery and reduce law and motion.  Accordingly, the City requests that the Court impose a limited stay of this action, pending the completion of the OCDASAU investigation.

## II. STATEMENT OF LAW

### A. The Factors Outlined By The Ninth Circuit In *Keating v. Office Of Thrift Supervision* Weigh In Favor Of A Limited Stay Of Discovery Pending Completion Of The OCDASAU Investigation.

"[A] court may decide in its discretion to stay civil proceedings . . . when the interest of justice seems [] to require such action."  Keating v. Officer of Thrift Supervision, 45 F.3d 322, 324 (9th Cir. 1995) (internal quotation marks and citations omitted).  "The decision whether to stay civil proceedings in the face of a parallel criminal proceeding should be made 'in light of the particular circumstances and competing interests involved in the case' and 'the extent which the defendant's fifth amendment rights are implicated.'"  Id. (quoting Federal Sav. & Loan Ins. Corp. v. Molinaro, 889 F.2d 899, 902 (9th Cir. 1989)).  Because

A court may use its discretion to determine whether to stay civil proceedings when the interests of justice require this action.  See United States v. Kordel, 397 U.S. 1, 12 n.27 (1970) ("Federal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action . . . .").  In the Ninth Circuit, a multi-factor test articulated in Keating v. Office of Thrift Supervision, 45 F.3d 322 (9th Cir. 1995)

- 2 -

is used to determine "whether to stay civil proceedings in the face of a parallel criminal proceeding." In determining whether a stay is warranted, the Ninth Circuit outlined factors a district court should consider:

The extent to which the defendant's fifth amendment rights are implicated. In addition, the decisionmaker should generally consider the following factors: (1) the interest of the plaintiff in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiff of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

Id. at 324-25 (internal citations omitted). Consideration of these factors warrants staying the civil case pending the resolution of the criminal investigation.

As to the first factor, while the plaintiffs have an interest in the expeditious resolution of this action, the delay (which is expected to be limited) caused by a stay will not unduly prejudice the plaintiffs. Specifically, any prejudice in delay due to evidentiary concerns is likely to be minimal given that both civil and criminal matters involve similar facts and witnesses from the same day in question. See, e.g., McCormick v. Rexroth, 2010 WL 934242, at *3 (N.D. Cal. Mar. 15, 2010) ("the fact that the witnesses for the two proceedings are likely to include many of the same people providing much of the same testimony should reduce the danger that any testimony will be lost as a result of the stay.").

Furthermore, because the incident occurred less than six months ago, a stay does not prejudice the plaintiffs. See Jones v. City of Indianapolis, 216 F.R.D. 440, 451 (S.D. Ind. 2003) ("As to Plaintiff's interest in proceeding expeditiously,

NOTICE OF MOTION AND MOTION TO STAY

Plaintiff does not demonstrate irreparable harm or prejudice if the Court grants a limited stay. . . .  If a limited stay is not granted, the Court finds that Defendants would be faced with an unnecessary dilemma: surrender their Fifth Amendment rights against self-incrimination, or not testify and risk the possibility of adverse inferences being taken from the assertion of these Fifth Amendment rights, or possibly even civil sanctions and/or the entry of a default judgment. A limited stay of discovery will eliminate this quandary.").  The first factor weighs in favor of a stay.

The second Keating factor, which considers the burden imposed on a defendant, overwhelmingly favors a stay.  Given the direct factual overlap between the civil and criminal matters, the involved officer's Fifth Amendment rights would be clearly implicated because any civil discovery or testimony could potentially be used against him in a criminal case and his refusal to testify here can be used against him in this civil case.

While "[a] defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege," whether the defendant's Fifth Amendment rights are implicated is a significant factor to consider.  Keating, 45 F.3d at 325-26.  The Fifth Amendment is implicated when parallel proceedings are "based on the same set of facts."  See ESG Capital Partners LP v. Statos, 22 F.Supp.3d 1042, 1046 (C.D. Cal. 2014).  If a civil litigant asserts his or her Fifth Amendment rights, then "an adverse inference can be drawn against him."  Id. at 1046 (relying on Doe ex rel. Rudy-Glanzer v. Glanzer, 232 F.3d 1258, 1264 (9th Cir. 2000)).  On the other hand, "if he cooperates with discovery in the civil case or gives incriminating testimony, it can be used against him in the criminal trial."  Id.  Here, the involved officer's Fifth Amendment right will most certainly be implicated because the plaintiffs will undoubtedly want to depose him and their questions would be centered on the shooting, the same incident underlying the criminal investigation.

- 4 -

NOTICE OF MOTION AND MOTION TO STAY

The third Keating factor, judicial efficiency, also favors imposition of a stay because any potential criminal action will involve many, if not all, of the same facts and some of the same issues. Jones v. Conte, 2005 WL 1287017, at *2 (N.D. Cal. Apr. 19, 2005) ("Staying the case makes efficient use of judicial resources by 'ensuring that common issues of fact will be resolved.'") (internal citations omitted). Thus, it serves the interest of judicial economy for the Court to stay this case.

The fourth Keating factor, the interests of third parties, does not appear to be implicated in this case. See, e.g., Petrov v. Alameda County, 2016 WL 6563355, at *6 (N.D. Cal. Nov. 4, 2016) ("[C]ourts have found [the fourth factor] salient…where the third parties at issue had a direct interest in the outcome of the litigation.") (internal citations omitted); ESG Capital, 22 F. Supp.3d at 1047 (finding the fourth factor neutral when neither party identified a third-party interest). Because there does not appear to be any third party interest in this matter, this factor does not weight in favor of either party.

Finally, the fifth Keating factor, the interest of the public in the pending civil and criminal litigation, weighs in favor of a stay. "[T]he public has in interest in ensuring that the criminal process is not undermined by ongoing civil cases." General Elec. Co. v. Liang, 2014 WL 1089264, at *6 (C.D. Cal. Mar. 19, 2014) (weighing "the risk of unfair criminal proceedings…against the public's interest in the speedy resolution of a plaintiff's civil claim."). "[T]he public's interest in the integrity of the criminal prosecution is entitled to precedence over a civil litigant." Id. (citation omitted). Further, the public has an interest in the efficient use of judicial resources. A stay would reduce the cost of litigation and avoid waste of judicial resources by avoiding discovery motions on this issue.

Because these factors weigh in favor of the City, the City respectfully requests that the Court exercise its discretion to stay this case pending resolution of OCDASAU's investigation.

NOTICE OF MOTION AND MOTION TO STAY

## B.   Substantial Prejudice Exists for the Defense if There is no Stay.

Whenever witnesses are asked to give sworn testimony, whether at deposition or trial, they may assert their Fifth Amendment right to refuse to answer questions if the answer "would in [itself] support a conviction…[or] would furnish a link in the chain of evidence needed to prosecute" them.  Hoffman v. United States, 341 U.S. 479, 486 (1951).  If a civil litigant asserts their Fifth Amendment right, then "an adverse inference can be drawn against him." ESG Capital, 22 F.Supp.3d at 1046.  On the other hand, "if he cooperates with discovery in the civil case or gives incriminating testimony, it can be used against him in the criminal trial." Id.

Chagolla v. City of Chicago, 529 F. Supp. 2d 941 (N.D. Ill. 2008), is instructive.  There, the plaintiff alleged that he was outside the front door of his apartment when eight police officers appeared and, after threatening him at gunpoint, entered and ransacked his apartment, stealing money that he kept at the location.  Chagolla further contended that the officers took him into custody and drove him in a police car to a parking lot, where they left him in the car with the heat turned on. Id. at 943.  Chagolla alleged that the officers made false statements that caused him to be charged with a crime and, as a result, he was detained in custody pending trial for over seven months. Id.  A few months later, three of the officers were charged criminally but each of the defendant officers moved to stay proceedings in Chagolla's civil case pending the resolution of all state and federal criminal proceedings and investigations. Id. at 944.  The district court was particularly concerned with the dilemma confronted in this case, where "it is not at all rare for a person faced with criminal charges or a pending investigation to invoke the privilege even though he may have done nothing wrong, out of an abundance of caution prompted by a careful criminal defense lawyer." Id. at 947.

Even as to unindicted officers, the court noted that "there [were] ongoing criminal investigations regarding the on-the-job conduct of all of the individual

- 6 -
NOTICE OF MOTION AND MOTION TO STAY

defendants," and "[u]nder the circumstances, there is no question that each of the individual defendants could legitimately claim his or her Fifth Amendment privilege against self-incrimination if required to answer the complaint or discovery requests in the present case." Id. at 944-45. "In the Court's experience, it is not at all rare for a person faced with criminal charges or a pending investigation to invoke the privilege even though he may have done nothing wrong, out of an abundance of caution prompted by a careful criminal defense lawyer." Id. at 947. To resolve the problem, and the adverse impact it creates on the full exercise of one's constitutional rights, the court utilized factors nearly identical to those outlined by the Ninth Circuit in Keating to determine the applicability of a stay. Id. at 945.

Similarly, in this case, absent a stay, the involved officer will be in an impossible position. While the criminal investigation is ongoing, the officer may decline to testify in this matter or respond to written discovery if he is named as a defendant. This would substantially impede his defense in this civil matter and penalize him and the City of Anaheim for exercising his fundamental Constitutional right. However, if the officer waives his Fifth Amendment rights, he no longer has that Constitutional shield should any criminal charges be brought against him. The Supreme Court has disapproved of procedures which require a party to surrender one constitutional right in order to assert another. Simmons v. United States, 390 U.S. 377, 394 (1968). A limited stay of this case avoids penalizing the City and the involved officer should the officer choose to invoke his Fifth Amendment right.

Based on experience, the City anticipates that the OCDASAU's investigation will take another approximately nine months. This is a limited window during which the Fifth Amendment may have applicability. As the Chagolla court noted, it is not at all rare for a person "pending investigation to invoke the privilege even though he may have done nothing wrong, out of an

- 7 -

NOTICE OF MOTION AND MOTION TO STAY

abundance of caution." 529 F. Supp. 2d at 947. In this scenario, where the investigation is not indefinite, and is likely to conclude in the coming months, and where the Court can revisit the progress of the investigation by way of a status conference, the City submits that a stay is appropriate.

**C.** **Potential Conflicts Of Interest Support Imposition Of A Stay, And The Conclusion Of The OCDASAU's Review May Resolve The Conflict.**

Further justification for imposition of a limited stay is the elimination of potential conflicts of interest and sparing a public entity what may be an extreme and unnecessary expense in the form of conflict counsel. Imposing a stay to avoid a potential conflict of interest was confronted by the United States District Court for the Southern District of New York in Muniz v. City of New York, 12 CIV. 719 TPG, 2012 WL 3104898 (S.D.N.Y. July 17, 2012), which arose out of alleged misconduct by New York Department of Corrections officers. In seeking a discovery stay, the department argued that the results of its internal investigation "may dictate whether corporation counsel can represent the [individual] defendants. Pursuant to N.Y. Gen. Mun. L. § 50–k, corporation counsel may only represent the [individual] defendants if it determines that they were acting within the scope of their public employment, in the discharge of their duties, and in accordance with the rules and regulations of their employing agency." Id. at *1. The department argued that imposing a stay until the conclusion of its internal investigation could avoid a potential conflict of interest situation if the individual defendant employees were found to be acting within the course and scope of their employment. The Court agreed with the department and ordered a limited stay on proceedings as to the individual defendants. Id.

Here, under the Government Code indemnity and defense provisions involving public employees, there may be potential conflicts of interest created by an officer exercising his constitutional rights and its impact vis-à-vis vicarious

- 8 -

liability on state law claims.  See Cal. Govt. Code §§ 825; 995.2; Stewart v. City of Pismo Beach, 35 Cal. App. 4th 1600, 1605 (1995) ("Section 995.2, subdivision (c) appears to have been intended to allow a public entity to withdraw from the defense of an employee in conflict of interest situations because it is unreasonable to require a public entity to finance litigation directed against it.); accord Laws v. County of San Diego, 219 Cal. App. 3d 189, 199-200 (1990) ("'Grounds for refusal to provide a defense; request of defense; refusal because of conflict of interest,' supplies criteria for the determination by the public entity of circumstances giving rise to a conflict of interest justifying a refusal to provide a defense to an employee or former employee.").  A limited stay of this action alleviates this issue and the corresponding expense.  In a time of strained municipal budgets, this factor supports the public interest in favor of a stay.

## III.    CONCLUSION

Based on the foregoing, Defendant City of Anaheim respectfully submits that the Court issue an order staying this action pending the conclusion of the OCDASAU's investigation.

DATED:  May 29, 2026                    CARPENTER, ROTHANS & DUMONT


                                        By:  /s/ Jill Williams
                                             Jill Williams
                                             Attorneys for Defendants

- 9 -

NOTICE OF MOTION AND MOTION TO STAY

## **L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for the defendants, certifies that this brief contains 2,864 words, which complies with the word limit of L.R. 11-6.1.

DATED:  May 29, 2026          CARPENTER, ROTHANS & DUMONT


By:  /s/ Jill Williams
Jill Williams
Attorneys for Defendants

- 10 -

NOTICE OF MOTION AND MOTION TO STAY