**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

**V. JAMES DESIMONE LAW**
V. James DeSimone (SBN: 119668)
vjdesimone@gmail.com
Carmen D. Sabater (SBN: 303546)
cds820@gmail.com
Ryann E. Hall (SBN: 306080)
rhall@vjdlaw.com
4052 Del Rey Avenue, Suite 102
Marina del Rey, California 90292
Telephone:  310.693.5561

**HARBOR JUSTICE LAW, APC**
Nikhil Ramnaney (SBN: 268554)
nikhil@harborjusticelaw.com
444 W. Ocean Blvd., Ste. 800
Long Beach, CA 90802
Telephone:   562-241-1010

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSIE CAMACHO; ALBERT ARZOLA,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF ANAHEIM; CHIEF OF POLICE RICK ARMENDARIZ, in his official capacity; DOE SHOOTER OFFICER; DOES 1-10,<br><br>Defendants. | Case No.: 8:25-cv-02872-MRA-ADS<br><br>**OPPOSITION TO MOTION TO DISMISS**<br><br>Date:   July 7, 2026<br>Time:   10:00 a.m.<br>Crtrm: 9B |

1

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 3

II.     LEGAL STANDARD .......................................................................................... 4

III.    ARGUMENT ....................................................................................................... 5

        A.      Plaintiffs State *Monell* Claims Against the City ................................... 5

                1.      Plaintiffs State a Claim for an Unconstitutional Custom
                        or Policy (Fifth Claim) ................................................................ 5

                2.      Plaintiffs State a Failure-to-Train Claim (Sixth Claim) ............. 7

                3.      Plaintiffs State a Ratification Claim (Seventh Claim) ................ 9

        B.      Plaintiffs State a Supervisory-Liability Claim Against Chief
                Armendariz ............................................................................................. 10

        C.      Plaintiffs State a Claim for False Arrest and False Imprisonment
                (Ninth Claim) ......................................................................................... 11

        D.      Any Dismissal Should Be With Leave to Amend ................................ 12

IV.     CONCLUSION .................................................................................................. 12

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

On December 6, 2025, at approximately 9:30 p.m., nineteen-year-old Alberto Arzola was walking into his own family home at 821 South Philadelphia Street in Anaheim. (¶¶1, 10, 27, 31.) He lived there with his mother, Plaintiff Rosie Camacho, and his fourteen-year-old cousin. (¶28.) Two Anaheim Police Department officers, riding in an unmarked vehicle with tinted windows, had pulled up to the residence to investigate a graffiti misdemeanor that Alberto did not commit. (¶¶30–31.)

The officers immediately exited the vehicle with their firearms drawn and ran toward the home, pointing their weapons at Alberto as he tried to enter through the front door. (¶¶32–34.) Without any visible threat, Doe Shooter Officer grabbed Alberto by the hood of his sweatshirt and aggressively dragged him backwards down the front steps. (¶¶33–34.) Alberto pleaded "Don't shoot" two to three times, showed the officers his empty hands, and attempted to comply by getting down on his knees with his hands open and in plain view. (¶¶35–36.) Despite the absence of any immediate threat, and despite the availability of less-lethal options, Doe Shooter Officer fired multiple rounds into Alberto's back and neck. (¶¶37–38.) No warning was given. (¶39.) Alberto died at the scene, and the officers failed to render or summon timely medical aid; his body remained at the scene for roughly six hours. (¶¶43, 46–51, 94.)

Defendants City of Anaheim and Chief Rick Armendariz move to dismiss Plaintiffs' Monell claims for unconstitutional custom or policy (Claim 5), failure to train (Claim 6), and ratification (Claim 7); the state-law claim for false arrest and false imprisonment (Claim 9); and all claims against Chief Armendariz. Measured against the liberal pleading standard of Rule 8—not the heightened proof standard Defendants implicitly demand—the First Amended Complaint states each challenged claim. The motion should be denied.

3

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8, which "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 requires the plaintiff to make only (1) a short and plain statement of the court's jurisdiction, (2) a short and plain statement of the claim showing that the plaintiff is entitled to relief, and (3) a demand for judgment and relief. *Davis v. Passman*, 442 U.S. 228 (1979); *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003). Under federal notice pleading, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. In deciding whether a pleading states a plausible claim for relief, the court considers the complaint's factual allegations, "together with all reasonable inferences" from those allegations. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011); *Capogrosso v. Sup. Ct.*, 588 F.3d 180, 184 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Further, under federal notice pleading, courts are liberal in construing complaints in favor of plaintiffs, and allegations of material fact are taken as true and construed in the light most favorable to the pleader. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1003-04 (9th Cir. 2008). In reviewing a dismissal for failure to state a claim under Rule 12(b)(6), the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the appellant. *N. Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983).

Civil rights actions are governed by the pleading requirements of Rule 8. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). There is no heightened pleading requirement for civil rights cases, and the Supreme Court has repeatedly rejected attempts by the Courts of Appeals to impose heightened pleading requirements in such cases. *Id.*; *Leatherman v. Tarrant Cnty.*, 507 U.S. 163 (1993).

## III.  ARGUMENT

### A.  Plaintiffs State *Monell* Claims Against the City

#### 1.  Plaintiffs State a Claim for an Unconstitutional Custom or Policy (Fifth Claim)

Plaintiffs may establish liability under *Monell* by showing a constitutional violation caused by a policy, custom, or practice of the public entity. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). A policy is a formally adopted rule, statute, or guideline adopted by a public entity. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). A custom or practice is more informal in nature, and *Monell* liability may be imposed for a constitutional violation resulting from persistent yet informal conduct of public employees. *Shaw v. California Dept. of Alcoholic Beverage Control*, 788 F.2d 600 (9th Cir. 1986). *Monell* liability may also be based on a policy of inaction that amounts to a failure to protect constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).

At the pleading stage, a plaintiff "need not prove the existence of [] a custom, but merely allege sufficient facts to make the claim plausible." *Doe v. Cnty. of San Joaquin*, No. 2:24-CV-00899 WBS CKD, 2024 WL 3697555, at 4 (E.D. Cal. Aug. 7, 2024) (citing *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), *and AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012)). "The policy or custom itself need only be alleged in general terms" because "[i]t is a rare plaintiff who will have access to the precise contours of a policy or custom prior to having engaged in discovery, and requiring a plaintiff to

plead its existence in detail is likely to be no more than an exercise in educated guesswork." *Est. of Osuna v. Cnty. of Stanislaus*, 392 F. Supp. 3d 1162, 1174–75 (E.D. Cal. 2019) (citations omitted).

A policy may also be inferred from a municipality's conduct after an incident, where it takes no steps to reprimand or otherwise respond to egregious conduct. *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) (citing *Grandstaff v. City of Borger, Texas*, 767 F.2d 161, 171 (5th Cir. 1985)). The "subsequent acceptance of dangerous recklessness by the policymaker tends to prove his preexisting disposition and policy," and where there is no indication that the municipality took any action besides attempting to avoid liability, it is reasonable to infer that the conduct accorded with a policy. *Grandstaff*, 767 F.2d at 171. Indeed, the Ninth Circuit has long recognized the "rule that post-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but is highly probative with respect to that inquiry." *Henry v. Cty. of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997), *opinion amended on denial of reh'g*, 137 F.3d 1372 (9th Cir. 1998).

Here, Plaintiffs allege that the City maintains a policy, practice, or custom of tolerating, encouraging, and ratifying the use of excessive and deadly force by its officers. (¶108.) The First Amended Complaint identifies the specific customs at issue, including the use of excessive and deadly force; the provision of inadequate training regarding the use of deadly force; the employment and retention of officers known to have dangerous propensities for abusing their authority and using excessive force; grossly inadequate procedures for reporting, supervising, investigating, reviewing, and disciplining officer misconduct; the imposition of discipline so slight as to be "tantamount to encouraging misconduct"; announcing that unjustified shootings are "within policy"; a "code of silence" under which officers do not report one another's misconduct; and a policy of inaction and indifference toward officers' uses of deadly force. (¶111(a)–(j); *see also* ¶¶63–69.)

6

Consistent with these customs, Plaintiffs allege that Doe Shooter Officer and the other officers involved were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with Alberto's death. (¶110.) That post-incident inaction is itself probative of a preexisting custom. *See McRorie*, 795 F.2d at 784. The City and its final policymakers, including Chief Armendariz, had actual or constructive knowledge of these customs and acted with deliberate indifference to their foreseeable consequences (¶113), and those customs were the moving force behind, and affirmatively linked to, the violation of Alberto's constitutional rights (¶¶70, 114, 121). Nothing more is required at the pleading stage. *Est. of Osuna*, 392 F. Supp. 3d at 1174–75.

The cited holding in *Meehan v. Cnty. of Los Angeles*, 856 F.2d 102 (9th Cir. 1988) is not dispositive of the claim, as Plaintiff is not predicating the Monell claim solely on "[p]roof of a single incident of unconstitutional activity." *Id*. at 107.  Instead, Plaintiff's allegations regarding a municipal policy and custom coupled with the City's failure to discipline or reprimand its officers is sufficient to defeat the motion.

2.      Plaintiffs State a Failure-to-Train Claim (Sixth Claim)

"[A] local governmental body may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights." *Oviatt*, 954 F.2d at 1474 (citing *Canton*, 489 U.S. at 388). "A policy of inaction or omission may be based on failure to implement procedural safeguards to prevent constitutional violations." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012). A local government's failure to train its employees "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Canton*, 489 U.S. at 388. A plaintiff alleging a failure-to-train claim must show: (1) he was deprived of a constitutional right; (2) the municipality had a training policy that "amounts to deliberate indifference to the [constitutional] rights of the persons with whom [its

police officers] are likely to come into contact"; and (3) his constitutional injury would have been avoided had the municipality properly trained those officers. *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007).

Plaintiffs allege each element. The training policies of the City "were not adequate to train its officers to handle the usual and recurring situations with which they must deal" (¶119); the City "was deliberately indifferent to the obvious consequences of its failure to train its Officers adequately" (¶120); and that failure was "so closely related to the deprivation of the DECEDENT's and Plaintiffs' rights as to be the moving force that caused the ultimate injury" (¶121). Plaintiffs further allege that the City failed to train its officers on the constitutional limits of the use of force, including when deadly force may lawfully be employed, and on the duty to render immediate medical aid after a use of force. (¶¶66–67.)

Defendants contend that Plaintiffs cannot establish deliberate indifference without alleging a pattern of similar prior violations. Plaintiffs allege exactly such a pattern: that the final policymakers, including Chief Armendariz, were deliberately indifferent to the need for adequate training on the use of deadly force "despite knowledge of a pattern of similar constitutional violations by officers under their command." (¶122.) That allegation, taken as true, defeats the motion.

In any event, a pattern is not always required. The Supreme Court has recognized that, "in a narrow range of circumstances," a pattern of prior violations is unnecessary where the unconstitutional consequences of failing to train are "patently obvious." *Connick v. Thompson*, 563 U.S. 51, 63-64 (2011); *see also Hyde v. City of Willcox*, 23 F.4th 863, 874 (9th Cir. 2022). The paradigmatic example is a municipality that arms its officers but provides no training on the constitutional limits of deadly force—a circumstance in which the need for training is "so obvious, that failure to do so could properly be characterized as deliberate indifference." *Canton*, 489 U.S. at 390 n.10 (internal quotation marks omitted). This case fits that example squarely. Plaintiffs allege that the City armed Doe

Shooter Officer and deployed him to investigate a minor graffiti offense (¶¶30, 32), yet failed to train him on when deadly force may constitutionally be used (¶¶66, 122)—with the patently obvious and predictable result that he shot a complying, unarmed teenager in the back and neck. (¶¶36–38.)

### 3.    Plaintiffs State a Ratification Claim (Seventh Claim)

Liability under a *Monell* ratification theory may attach when a final policymaker ratifies a subordinate's unconstitutional action and the basis for it. *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999); *see generally Monell*, 436 U.S. 658. To show ratification, a plaintiff must establish that "authorized policymakers approve a subordinate's decision and the basis for it." *Christie*, 176 F.3d at 1239 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality)); *see also Lytle v. Carl*, 382 F.3d 978, 987–88 (9th Cir. 2004) ("[R]atification requires both knowledge of the alleged constitutional violation, and proof that the policymaker specifically approved of the subordinate's act."); *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 985 (9th Cir. 2002); *see also* Ninth Cir. Model Jury Instruction 9.7.

Plaintiffs allege each element. Doe Shooter Officer acted under color of state law and within the course and scope of his employment with APD. (¶127.) His unconstitutional conduct deprived Alberto of his constitutional rights when he shot him without justification while Alberto posed no immediate threat. (¶¶128, 37–38.) One or more final policymakers, including Chief Armendariz, possessing final policymaking authority over the Anaheim Police Department, ratified (or will ratify) that conduct by reviewing the shooting with knowledge that Alberto did not pose an immediate threat of death or serious bodily injury, expressly approving the use of deadly force, and failing to impose any discipline. (¶129.)

Defendants argue that a mere failure to discipline a subordinate, without more, cannot support a ratification claim. But Plaintiffs allege something more: an affirmative determination (made or to be made) by the City's final policymakers

9

that Doe Shooter Officer's conduct was "within policy." (¶131.) APD's official policy prohibits the use of deadly force unless an individual poses an immediate threat of death or serious bodily injury, and Doe Shooter Officer's conduct deviated from that policy because Alberto posed no such threat. (¶130.) A final policymaker's determination that this unconstitutional use of deadly force was nonetheless "within policy" is not mere acquiescence—it is an affirmative endorsement of conduct the City's own written rules forbid. That is ratification. *Christie*, 176 F.3d at 1239; *Lytle*, 382 F.3d at 987–88.

### B. Plaintiffs State a Supervisory-Liability Claim Against Chief Armendariz

The Ninth Circuit has recognized that supervisory liability can be predicated on a theory or ratification. A supervisor's subsequent "ratification" of another's conduct can form the basis for liability under § 1983. *See Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir.1991). "[T]he plaintiff must show that the triggering decision was the product of a "conscious, affirmative choice" to ratify the conduct in question. *Haugen v. Brosseau*, 351 F.3d 372, 393 (9th Cir. 2003), *judgment vacated on other grounds*, 543 U.S. 194 (2004).

In *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991), which held that a police chief could be liable under supervisory liability where he received complaints about officers' conduct, conducted a sham investigation, and publicly defended the officers. The court reasoned that this constituted ratification of the unconstitutional acts. This principle was similarly recognized in *Hyde v. City of Willcox*, 23 F.4th 863, 874 (9th Cir. 2022)("But supervisors 'can be liable for… their acquiescence in the constitutional deprivation of which a complaint is made.'")(quoting *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000)). As discussed in Section A.3., Plaintiffs adequately plead the theory of ratification and therefore the supervisory allegations against Chief Armendariz in his individual capacity are sufficient to survive a motion to dismiss. Federal Rule of Civil

10

Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 1550 U.S. 544, 555 (2007)(internal citation omitted). Here, Plaintiff raised allegations pertaining to the theory of ratification in the complaint and alleged a theory of supervisory liability. As such, Defendant has fair notice of the claim asserted. However, if the Court deems it necessary, Plaintiff requests leave to amend to clarify the allegations pertaining to supervisory liability.

### C.    Plaintiffs State a Claim for False Arrest and False Imprisonment (Ninth Claim)

Defendants argue that Claim 9 fails because Alberto was not subject to a Fourth Amendment seizure before force was used, reasoning that he never submitted to a show of authority. That argument misreads both the law Defendants cite and the allegations of the First Amended Complaint.

Defendants' own authority defeats their argument. As the Supreme Court explained in the very case on which Defendants rely, the word "seizure" "readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful." *California v. Hodari D.*, 499 U.S. 621, 626 (1991), quoted at MTD 18:24–27. Submission is required only as an alternative to physical force: an arrest "requires either physical force . . . or, where that is absent, *submission* to the assertion of authority." *Id*. at 626.

Here, physical force was not absent. Plaintiffs allege that Doe Shooter Officer "grabbed [Alberto] by the hood of his sweatshirt and aggressively dragged him backwards down the front steps." (¶34; *see also* ¶73.) That grabbing and dragging was a "laying on of hands" and an "application of physical force to restrain movement," a completed seizure at the moment of physical contact, independent of any submission, and well before the shots were fired.

Accepting the allegations as true and drawing all reasonable inferences in Plaintiffs' favor, as the Court must at this stage, Alberto was seized when he was grabbed and dragged down the stairs.

That seizure was unlawful because Plaintiffs allege that Doe Shooter Officer detained Alberto without reasonable suspicion or probable cause, that Alberto was not suspected of any serious or violent crime and was not engaged in any criminal activity, and that his freedom of movement was intentionally restricted. (¶¶143–145.) Those allegations state a claim for false arrest and false imprisonment under California law.

Defendants' alternative contention that Claim 9 is duplicative of Plaintiffs' excessive-force claims is not a ground for dismissal under Rule 12(b)(6). Claim 9 challenges the unlawful detention itself: the forcible grab-and-drag without reasonable suspicion, which is analytically distinct from the separate question whether the subsequent deadly force was reasonable. And Rule 8 permits a plaintiff to plead alternative and even cumulative theories of relief.

**D.     Any Dismissal Should Be With Leave to Amend**

Even if the Court were to find any of the allegations insufficient as pleaded, dismissal with prejudice is improper. Leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2).

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied. Should the Court grant any portion of the motion, Plaintiffs respectfully request leave to amend.

Dated: June 16, 2026                    **LAW OFFICES OF DALE K. GALIPO**

By:    */s/    Cooper Alison-Mayne*
        Dale K. Galipo
        Cooper Alison-Mayne

        *Attorneys for Plaintiffs*

**Certificate of Compliance**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains **3242** words, which complies with the 7,000 word limit of L.R. 11-6.1.

Dated: June 16, 2026     **LAW OFFICES OF DALE K. GALIPO**

By:   */s/   Cooper Alison-Mayne*
Dale K. Galipo
Cooper Alison-Mayne

*Attorneys for Plaintiffs*