**STEVEN J. ROTHANS – State Bar No. 106579**
**JILL WILLIAMS - State Bar No. 221793**
**KIMBERLY SARMIENTO – State Bar No. 345641**
**CARPENTER, ROTHANS & DUMONT LLP**
**500 South Grand Avenue, 19th Floor**
**Los Angeles, California 90071**
**(213) 228-0400 / (213) 228-0401 (Fax)**
**srothans@crdlaw.com / jwilliams@crdlaw.com / ksarmiento@crdlaw.com**

**ROBERT FABELA, CITY ATTORNEY**
**GREGG AUDET – State Bar No. 158682**
**Assistant City Attorney**
**200 S. Anaheim Boulevard, Suite 356**
**Anaheim, CA  92805**
**(714) 765-5169 / (714) 765-5123 [Fax]**
**gaudet@anaheim.net**

Attorneys for Defendants,
City of Anaheim and Chief Rick Armendariz

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSIE CAMACHO and ALBERT ARZOLA, individually and as successors-in-interest to DECEDENT ARZOLA, deceased,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF ANAHEIM; CHIEF OF POLICE RICK ARMENDARIZ, in his official capacity; DOE SHOOTER OFFICER in his individual and official capacity; and DOES 1-10, inclusive,<br><br>    Defendants. | Case No. 8:25-cv-02872-MRA-ADS<br><br>**REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR ORDER STAYING CASE PENDING CONCLUSION OF ORANGE COUNTY DISTRICT ATTORNEY'S OFFICE CRIMINAL INVESTIGATION**<br><br>Date:  July 21, 2026<br>Time: 10 a.m.<br> Courtroom: 9B (Santa Ana)<br><br>Discovery cut-off:  Not set<br>Final pre-trial conference:  Not set<br>Trial:  Not set |

COME NOW Defendants City of Anaheim and Chief Rick Armendariz will and hereby submit the following memorandum of points and authorities in reply to the plaintiffs' opposition to the defendants' motion for an order staying this action pending the Orange County District Attorney's Office criminal investigation.

-1-

REPLY TO PLAINTIFFS' OPPOSITION TO
MOTION FOR ORDER STAYING CASE

DATED:  July 7, 2026                    CARPENTER, ROTHANS & DUMONT


                          By:  /s/ Kimberly Sarmiento
                               Jill Williams
                               Kimberly Sarmiento
                               Attorneys for Defendants

REPLY TO PLAINTIFFS' OPPOSITION TO
MOTION FOR ORDER STAYING CASE

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This lawsuit arises out of the shooting of the plaintiffs' decedent by an Anaheim Police Department police officer roughly seven months ago, on December 6, 2025.  The shooting is currently being investigated by the Orange County District Attorney's Office, Special Assignment Unit (OCDASAU), whose team members are tasked with investigating the lawfulness of the use of force incident and determining whether criminal charges should be filed against the officers involved.

Notwithstanding the fact that the subject incident underlying this civil litigation and the OCDASAU's criminal investigation just occurred just seven months ago, Plaintiffs argue that a temporary stay would prejudice them. Allowing the OCDASAU to complete its thorough investigation would preserve evidence, potentially uncover new evidence and/or witnesses critical to their civil action—all reasons that would actually serve to their benefit as well—support a stay.  However, Plaintiffs rely on cursory arguments that they have an interest in proceeding expeditiously and that the Court should implement "less drastic alternatives" instead.

However, the availability of "less drastic alternatives" (whatever Plaintiffs believe those may be) are not part of the Ninth Circuit's standard for determining whether a stay is appropriate.  Plaintiffs' contention that the Court should deny Defendants' motion because other courts have denied similar requests for stays is equally unpersuasive.  First, the decision of whether to grant a stay is within the sound discretion of the Court; hence, that is why plenty of California federal courts have also *granted* similar requests for stays.  See, e.g., Houseton v. Kirk, 2024 WL 3051057 at *4 (C.D. Cal. 2024) (ordering complete stay of civil proceedings pending a parallel criminal investigation by the FBI into the deputy defendant's conduct in the subject incident); Wroth v. City of Rohnert Park, 2018 WL 888466

- 1 -

REPLY IN SUPPORT OF MOTION TO STAY

at *2 (N.D. Cal. 2018) (granting motion to stay pending outcome of criminal investigation related to the an in custody death of a pretrial detainee, recognizing that although there had been no indictment against the officers, the "officers still have legitimate concerns about potential impending criminal prosecution" and noting that the prejudice to plaintiffs is limited because the requested stay is only until the criminal investigation is completed); Estate of Limon v. City of Oxnard, 2013 WL 12131359 at *7 (denying stay of entire civil proceedings but granting "stay of all discovery against the individual officers named in th[e] lawsuit who were present during the shooting of [decedent]," ordering that plaintiffs could "not propound discovery on or depose the individual officers during th[e] partial stay…"); Monterrosa v. City of Vallejo, 2023 WL 8113523 at *8 (E.D. Cal. 2023) (granting in part motion to stay discovery directed at officer defendant based on a pending DOJ investigation, even though the incident occurred two and half years prior to the court's consideration of the motion to stay without any initiation of criminal charges against the officer defendant); Ochoa v. City of Los Angeles, 2021 WL 6752249 at *3 (C.D. Cal. 2021) (granting motion to stay civil proceedings in police misconduct case, where "neither party dispute[d] that the subject matter of the criminal case and th[e] civil action [we]re based on the same legal issues and factual allegations"); Williams v. Dumaguindin, 2021 WL 4464189 at (C.D. Cal. 2021) (granting motion to stay civil proceedings in wrongful death action arising out of a police shooting); Lopez v. City of Anaheim, 2022 WL 16859969 at *4 (C.D. Cal. 2022) (granting motion to stay discovery directed at the officer defendants pending DOJ investigation, in civil action arising out of officer-involved shooting); Franco v. City of West Covina, 2019 WL 6794203 at *4 (C.D. Cal. 2019) (granting in part motion to stay, ordering a stay of all discovery directed to or related to the officer defendant's involvement in a shooting incident); Moreno v. County of Los Angeles, 2023 WL 8165517 at *6 (C.D. Cal. 2023) (granting in part motion to stay, staying discovery directed at officer defendant in fatal police

REPLY IN SUPPORT OF MOTION TO STAY

shooting case); <u>C.M. by and through McClain v. County of Los Angeles</u>, 2017 WL 10527380 at *6 (C.D. Cal. 2017) (granting limited stay as to officer defendant pending District Attorney's investigation); <u>Estate of Lopez v. Suhr</u>, 2016 WL 1639547 at *7 (N.D. Cal. 2016) (staying discover directed to the officer defendants in case arising out of fatal officer-involved shooting).

More importantly, the decision of whether to grant a stay unequivocally requires a review and analysis of the specific circumstances of each case. This civil action deserves to be evaluated on its own, unique set of facts and circumstances—rather than summarily denied simply because other courts have deemed such action appropriate in other, unrelated cases. For the reasons more fully set forth below, a stay is warranted here, and Defendants respectfully request that the Court grant the underlying motion in its entirety.

**II. STATEMENT OF LAW**

    **A. The mere possibility of criminal charges presents a legitimate Fifth Amendment issue for the officer defendant.**

The Opposition advances the argument that a limited stay of the proceedings is not warranted because "[t]he Officer is Not Currently Subject to Any Criminal Proceedings…" Pls. Opp. at p. 4. However, this is not the standard set forth in <u>Keating v. Office of Thrift Supervision</u>, 45 F.3d 322 (9th Cir. 1995). As set forth above, there are a multitude of instances where California federal courts have granted stays akin to Defendants' requested stay here, in cases involving alleged police misconduct, including in circumstances where no indictment has been returned. The Opposition also repeatedly states that Defendants have not presented evidence that the OCDASAU "is anything more than standard procedure" (not that Defendants are required to make such showing) and argues that Defendants' motion is based on "speculation." Pls. Opp. at p. 2. Yet, Plaintiffs proffer no rebuttal evidence that the OCDASAU has expressed its intent to forego criminal

REPLY IN SUPPORT OF MOTION TO STAY

charges against the involved officer.  To that end, Plaintiffs' position is equally speculative.

Again, the lack of an indictment does not eliminate the threat of criminal prosecution and is not determinative of the Court's evaluation of whether a stay is appropriate.  Lopez, 2022 WL 16859969 at *2.  Courts have expressly ruled that "a stay should not be categorically denied solely because the defendant has not yet been indicted."  Chao v. Fleming, 498 F.Supp.2d 1034, 1038 (W.D. Mi. 2007) (quoting Walsh Secs., Inc. v. Cristo Prop. Mgmt., Ltd., 7 F.Supp.2d 523, 527 (D.N.J. 1998) (citing parallel civil and criminal proceedings, 129 F.R.D. 201, 203 (1989)).  This is partly because even where there is no indictment, "[a] valid assertion of the [Fifth Amendment] privilege does not require an imminent criminal prosecution or investigation…"  Estate of Limon, 2013 WL 12131359 at *4 (quoting Englebrick v. Worthinton Indus., Inc., 670 F.Supp.2d 1048, 1050 (C.D. Cal. 2009) and In re Master Key Litig., 507 F.2d 292, 293 (9th Cir. 1974)).

Accordingly, rather than looking to whether an indictment has been issued, some courts instead look to whether "there is substantial overlap between a criminal investigation and the allegations in the civil lawsuit."  Williams, 2021 WL 4464189 at *2 (noting that there was "no reasonable dispute that the LADA investigates officer-involved shootings in Los Angeles County and that the shooting under investigation is the same as that from which the present lawsuit arises").  The rationale behind this is that "the Fifth Amendment rights of [] individual officer defendants are directly implicated [where] the instant civil lawsuit and the [criminal investigating agency's] investigation arise out of the same nucleus of facts, namely the circumstances leading up to and surrounding [a decedent's] death."  Estate of Limon, 2013 WL 12131359 at *4.

Here, there is absolutely no question that the OCDASAU's investigation arises out of the same nucleus of facts, i.e., the facts and circumstances of the shooting incident involving the decedent.  To that end, it cannot be said that "there

- 4 -

REPLY IN SUPPORT OF MOTION TO STAY

is an absence of any hint of criminal proceedings" merely because there is no criminal indictment. Franco, 2019 WL 6794203 at *2.

Moreover, courts have reasoned that "[s]ince adverse inferences can be drawn in a civil case from a party's invocation of the privilege against self-incrimination, [the officer defendant] could harm Defendants' civil case while exercising his constitutional right against self-incrimination." C.M., 2017 WL 10527380 at *3. And that is precisely the Catch-22 that an officer who may be named as a defendant finds himself in here: exercise his constitutional rights at the risk of harming Defendant City's (and his own) defense. Franco, 2019 WL 6794203 at *3 (recognizing that an officer defendant's potential invocation of the Fifth Amendment "could negatively affect both his and the [governmental entity's] defense in the civil case," thereby weighing in favor of a stay). Plaintiffs' assertion that the statute of limitations for murder and voluntary manslaughter mean that the stay will be limitless is unpersuasive. Defendants' request for a temporary stay is not dependent or otherwise controlled by the statute of limitations; it is tied to the conclusion of the OCDASAU's investigation. Again, the OCDASAU expressly identifies itself as the "primary advisor" to the Orange County Grand Jury for purposes of evaluating whether criminal charges should be brought against police officers in officer-involved shootings.

Importantly, a stay allows Defendants to proceed with a civil action "unencumbered by the threat of criminal liability," weighing in favor of a stay of the proceedings here pending the OCDASAU's investigation. C.M., 2017 WL 10527380 at *5.

**B.** **<u>Plaintiffs have not, and cannot, articulate how a temporary stay would prejudice them.</u>**

The Opposition proffers no legitimate prejudice to them by a temporary stay, stating broadly that Plaintiffs "have an interest in proceeding expeditiously with this litigation to obtain some semblance of closure," and oddly, that "a stay

- 5 -

REPLY IN SUPPORT OF MOTION TO STAY

would potentially deprive Plaintiffs of the ability to pursue their civil claims." Pls. Opp. at p. 3. However, the Opposition provides no explanation of how a limited stay would result in a dismissal of their civil action. This is because a temporary stay poses no actual prejudice, particularly where the subject incident occurred just seven months ago, and this litigation was initiated less than seven months ago. See Dkt. 1. For instance, in Lopez, the court noted that the plaintiffs were not prejudiced by a stay because the shooting that was the basis of that case "occurred just over a year ago" and because "[e]vidence [wa]s likely to be preserved through the California DOJ investigation." Lopez, 2022 WL 16859969 at *2. Here, it is undisputed that this litigation arises out of a shooting that occurred on December 6, 2025, and that Plaintiffs filed their Complaint for Damages on December 15, 2025.

Moreover, Plaintiffs' contention that "[e]ach day of a stay runs the risk of memories fading or witnesses becoming otherwise inaccessible" is unavailing. Pls. Opp. at p. 3. Indeed, the Opposition itself acknowledges that the decedent's "fourteen-year-old cousin…witnessed the incident from the front porch" and that the plaintiffs themselves "rushed outside upon hearing gunshots," and thus, are witnesses to the events immediately following the shooting incident. Id. at p. 2. In effect, the critical witnesses are the involved officer, Plaintiffs, and Plaintiffs' family member—all of whom would be readily accessible for this litigation upon the conclusion of the OCDASAU's investigation. Critically, any evidence of the subject incident would be preserved through this ongoing investigation for use in the civil action. Furthermore, Plaintiffs arguably have more of an interest in staying the proceedings pending the outcome of the investigation to the extent any additional percipient witnesses are identified.

Ultimately, a stay would not deny Plaintiffs the justice they contend they are seeking or preclude them from having their day in court. This is particularly true where the Court has the inherent authority to order status reports or otherwise tailor an order with respect to the stay as it sees appropriate, and the Opposition

REPLY IN SUPPORT OF MOTION TO STAY

itself acknowledges that Defendants have provided an estimate of nine more months for conclusion of the investigation. Williams, 2021 WL 4464189 at *4 (C.D. Cal. 2021) (noting that limiting the duration of the stay and its scope…mitigates plaintiff's concern regarding prompt resolution of the civil action and that granting a stay would "significantly affect the timely resolution of [a] matter").

### C.    A stay of the civil proceedings will streamline the issues in this case, thereby promoting judicial economy.

Here, if the involved officer were to invoke his Fifth Amendment rights at deposition, Plaintiffs may file motions to compel their responses to certain questions if they believe that the officer's invocation was improper. This would undoubtedly consume the Court's time in having to oversee additional law and motion, which would again, be mitigated through a stay of the proceedings.

As many courts have noted, "[t]he resolution of the criminal [investigation] may narrow the scope of civil discovery," which would "promote judicial efficiency and may benefit [even] nonparties." Wroth, 2018 WL 888466 at *3 (citing cases for the proposition that staying a civil proceeding pending a related criminal investigation may preserve court resources by mitigating the need for certain witnesses and "allow[] the investigation to resolve common issues of fact and ensuring that civil discovery proceeds without Fifth Amendment concerns"); Williams, 2021 WL 4464189 at *4 ("[A]llowing time for the criminal investigation to proceed might in fact render discovery…more efficient" by eliminat[ing] the need for discovery motions related to [the officer defendant's] assertion of Fifth Amendment privilege").

This stands contrary to Plaintiffs' contention that a stay would impede judicial efficiency. Critically, courts have made clear: although the courts have an interest in clearing their docket, "the courts exist to mete out justice—not solely to clear out cases." Lopez, 2022 WL 16859969 at *3 (quoting Pinnock v. Doe, 2014

- 7 -

REPLY IN SUPPORT OF MOTION TO STAY

WL 4679007 at *4 (C.D. Cal. 2014)) (emphasis added).  This is why the decision of whether to grant a stay rests firmly upon each respective Court.  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel and for litigants."  Williams, 2021 WL 4464189 at *2 (quoting Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)).

Therefore, a stay promotes judicial economy by streamlining the issues in this case, particularly for discovery purposes, and eliminates the need for unnecessary law and motion.

**D.**   **A stay serves the public interest by ensuring the criminal investigation is not subverted by Plaintiffs' desire to proceed expeditiously.**

Plaintiffs make a cursory argument that the "public has an interest in the prompt disposition of civil litigation."  Pls. Opp. at p. 8.  However, courts have expressed that stays are particularly important in cases alleging police misconduct because the public "has an interest in the [investigating agency's] effective conduct of its investigation, which signals to the public that the police officers do not operate outside the confines of the law."  Estate of Limon, 2013 WL 121313159 at *6 (C.D. Cal. 2013).  To that end, temporary stays of civil proceedings serve the public interest by "ensuring that the criminal process is not subverted by ongoing civil cases."  Wroth, 2018 WL 888466 at *3 (quoting Douglas v. United States, 2006 WL 2038375 at *6 (N.D. Cal. 2006)); see also Williams, 2021 WL 4464189 at *4 (finding the public interest factor weighed in favor of a stay because it "ensur[es] that the criminal process is not undermined by ongoing civil cases").

Importantly, as one court noted, "[i]n such high visibility situations, it is especially necessary to guard the rights of defendants, and concern for [proceeding in a civil case] must not be allowed to override the individual defendant's due process rights."  Lopez, 2022 WL 16859969 at *4  (quoting Keating, 45 F.3d at 326).  That is precisely the case here, where Plaintiffs are levying serious

- 8 -

REPLY IN SUPPORT OF MOTION TO STAY

allegations of misconduct against the involved officer and the City's police department, and the public has a significant interest in ensuring that such allegations are thoroughly investigated both in the criminal context by allowing the OCDASAU to determine whether criminal charges are appropriate, and by allowing the civil case to proceed without being impeded by the desire to rush the case forward without the conclusion of the OCDASAU's independent investigation.

## III.    CONCLUSION

Based on the foregoing, the defendants respectfully submit that the Court issue an order staying this action pending the conclusion of the OCDASAU's investigation.

DATED:  July 7, 2026                    CARPENTER, ROTHANS & DUMONT


                                        By:  /s/ Kimberly Sarmiento
                                             Jill Williams
                                             Kimberly Sarmiento
                                             Attorneys for Defendants

- 9 -

REPLY IN SUPPORT OF MOTION TO STAY

## **L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for the defendants, certifies that this brief contains 2,713 words, which complies with the word limit of L.R. 11-6.1.

DATED: July 7, 2026                CARPENTER, ROTHANS & DUMONT


                                   By:  /s/ Kimberly Sarmiento
                                        Jill Williams
                                        Kimberly Sarmiento
                                        Attorneys for Defendants

- 10 -

REPLY IN SUPPORT OF MOTION TO STAY